**Richmond**

COMMONWEALTH OF VIRGINIA *ex rel.* GRAY

v.

ALONZO JOHNSON

No. 0918-87-2

Decided February 7, 1989

616

COUNSEL

Betsy S. Elliott, Assistant Attorney General (Mary Sue Terry, Attorney General, John A. Rupp, Senior Assistant Attorney General, Robert B. Cousins, Jr., Senior Assistant Attorney General, on brief), for appellant.

No brief or argument for appellee, Alonzo Johnson.

OPINION

KOONTZ, C.J.—The Division of Child Support Enforcement (the "Division") challenges the dismissal of a civil support petition originally filed by Louise Gray, a welfare recipient, against

Alonzo Johnson to adjudicate paternity and establish a support obligation and the dismissal of its petition as an intervenor in that proceeding pursuant to Code § 63.1-276 (now Code § 63.1-251). The trial court sustained Johnson's plea of *res judicata* and dismissed both petitions without reaching the merits of either petition.

The facts are not complicated and consist primarily of the procedural history of the case. Louise Gray first filed a civil child support petition against Alonzo Johnson in the King George County Juvenile and Domestic Relations District Court on March 26, 1981. Gray sought support for her two children, Petey Junior Gray and Myron O'Neil Gray. Gray was not represented by counsel, the children were not made parties to the proceeding, nor was a guardian *ad litem* appointed to represent the children. At a hearing on this petition on May 18, 1981, Johnson acknowledged that he was the father of Petey; however he denied being the father of Myron. The court ordered Johnson to pay support for Petey. The court denied the petition for the support of Myron, finding that Johnson "may not be the father" of Myron.

Gray filed a second civil child support petition on November 2, 1983, against Johnson. The juvenile and domestic relations district court denied the petition without a hearing on the ground of *res judicata*. Following Gray's appeal to the circuit court, the Division filed a petition to intervene because Gray was receiving public assistance for Myron. The Division also petitioned the court to appoint a guardian *ad litem* to represent Myron's interests but did not request that he be made a party to the proceeding. The trial court allowed the Division to intervene and appointed a guardian *ad litem* pursuant to the Division's request. Johnson once again pled *res judicata*. The trial court, after reviewing briefs and hearing arguments of counsel on the plea of *res judicata*, sustained the plea and dismissed Gray's petition and the Division's petition by final order entered June 18, 1987.

■ *Res judicata* is a judicially created doctrine founded upon the "considerations of public policy which favor certainty in the establishment of legal relations, demand an end to litigation, and seek to prevent harassment of parties." *Bates v. Devers*, 214 Va. 667, 670, 202 S.E.2d 917, 920 (1974)(citation omitted). *Res judicata* literally means a "matter adjudged," *Black's Law Dictionary* 1174 (5th ed. 1979), and it precludes relitigation of a claim or

issue once a final determination on the merits has been reached by a court of competent jurisdiction. It rests upon the principle that a person should not be required to relitigate the same matter a second time "with the same person or another so identified in interest with such person that he represents the same legal right, precisely the same question, particular controversy, or issue, which has been necessarily tried and fully determined, upon the merits, by a court of competent jurisdiction . . . ." *Patterson v. Saunders*, 194 Va. 607, 614, 74 S.E.2d 204, 209, *cert. denied*, 354 U.S. 998 (1953). In short, once a matter or issue has been adjudicated, it may be relied upon as conclusive between the parties, or their privies, in any subsequent suit.

■ The doctrine of *res judicata* encompasses four preclusive effects that a final judgment may have upon subsequent litigation: *res judicata-bar*, merger, direct estoppel and collateral estoppel. *Dotson v. Harman*, 232 Va. 402, 405, 350 S.E.2d 642, 644 (1986). In *Bates*, the Supreme Court defined and expounded upon these conceptually distinct preclusive effects. For our purposes, the principle of *res judicata-bar* is at issue.

■ "*Res judicata-bar* is the particular preclusive effect commonly meant by use of the term 'res judicata.' A valid, personal judgment on the merits in favor of defendant bars relitigation of the *same cause of action*, or any part thereof which could have been litigated, between the same parties and their privies." *Bates*, 214 Va. at 670-71, 202 S.E.2d at 920-21 (emphasis in original)(footnote omitted).

■ A person seeking to assert *res judicata* as a defense must establish: (1) identity of the remedies sought; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality of the persons for or against whom the claim is made. *Wright v. Castles*, 232 Va. 218, 222, 349 S.E.2d 125, 128 (1986). He must also establish that a final judgment on the merits has been reached by a court of competent jurisdiction. *Storm v. Nationwide Mutual Insurance Co.*, 199 Va. 130, 134, 97 S.E.2d 759, 761 (1957); *Patterson v. Anderson*, 194 Va. 557, 564-65, 74 S.E.2d 195, 200, *cert. denied*, 345 U.S. 965 (1953).

Although the Division raises numerous arguments in support of its position that the second paternity action brought in 1983 was not barred under the doctrine of *res judicata*, we believe the dis-

positive issues in this case are: (1) whether the minor child was in privity with his mother such that mother and child were so identified in interest that she represented the legal rights of the minor child in the 1981 paternity action, and (2) whether *res judicata* is applicable to the petition as filed by the Division on the facts of this case.

■ "One of the fundamental prerequisites to the application of the doctrine of *res judicata* is that there must be an identity of the parties between the present suit and prior litigation asserted as a bar. A party to the present suit, to be barred by the doctrine, must have been a party to the prior litigation, or represented by another so identified in interest that he represents the same legal right." *Dotson*, 232 Va. at 404-05, 350 S.E.2d at 644.

There is no fixed definition of privity that automatically can be applied in all cases involving *res judicata* issues. While privity generally involves a party so identified in interest with another that he represents the same legal right, a determination of . . . who are privies requires a careful examination of the circumstances of each case.

*Nero v. Ferris*, 222 Va. 807, 813, 284 S.E.2d 828, 831 (1981).

■ In *Patterson v. Saunders*, the Supreme Court stated:

It is generally held that " 'privity' means a mutual or successive relationship to the same rights of property, or such an identification in interest of one person with another as to represent the same legal rights, and the term 'privy,' when applied to a judgment or decree refers to one whose interest has been legally represented at the trial."

194 Va. at 613, 74 S.E.2d at 208.

In the present case, the issue presented in Louise Gray's 1981 and 1983 paternity actions was the same, *i.e.*, whether Alonzo Johnson is the father of Myron O'Neil Gray. The remedy sought in both instances was a judgment of paternity and support for Myron. We assume, without deciding, that the judgment in the first action was on the merits.[1] Therefore, the trial court was cor-

---

[1] The order entered by the juvenile court on May 18, 1981, states: "Paternity denied. Petition denied on Court's finding that Alonzo O. Johnson may not be the father of Myron

rect in ruling that the doctrine of *res judicata* bars her 1983 action. However, Louise Gray initiated the first action individually. She did not initiate the first action in the name of Myron as his next friend. *See* Code § 8.01-8. In the second action, only after the matter was appealed to the circuit court did the Division petition to intervene and the trial court appoint counsel to represent the minor child's interest. Myron was therefore not a named party to the first action, and only if he was in privity with his mother is he or the Division as his subrogee precluded from litigating the second action under the doctrine of *res judicata.*

■ The generally prevailing view is that the parent-child relationship does not establish privity, and a child is therefore not bound by a judgment against his parent. Note, *Privity, Preclusion, and the Parent-Child Relationship*, 1977 B.Y.U. L. Rev. 612, 621 (1977). Numerous courts that have considered the issue have held that a parent and child are not in privity, and therefore that a child who is not made a party to a paternity action is not bound by judgment against a parent in a subsequent proceeding to establish paternity. *See, e.g., Ruddock v. Ohls*, 91 Cal. App. 3d 271, 286, 154 Cal. Rptr. 87, 96-97 (1979)(finding of non-paternity is not binding on the child, unless child is joined as a party because mother and child not in privity); *Department of Health & Rehabilitative Services ex rel. Ward v. Wyatt*, 475 So. 2d 1332, 1334 (Fla. Dist. Ct. App. 1985) (child not a party to first action not barred by *res judicata* because child and mother are not in privity due to divergent interests); *In re M.D.H.*, 437 N.E.2d 119, 130 (Ind. Ct. App. 1982)(*res judicata* inapplicable to support petition of child because earlier action was not filed by or in the name of the child); *Arsenault v. Carrier*, 390 A.2d 1048, 1051 (Me. 1978)(child's subsequent suit not barred because privity not present in relationship between parent and child); *Johnson v. Norman*, 66 Ohio St. 2d 186, 190, 421 N.E.2d 124, 127 (1981)(minor child and mother not in privity, therefore child may bring subsequent action following dismissal with prejudice of mother's claim); *see also Whitehead v. General Telephone Co.*, 20 Ohio St. 2d

---

O. Gray." We recognize that a finding that Johnson "may not be the father of Myron O. Gray" is not necessarily equivalent to a definitive finding of non-paternity. The court's ruling could potentially be interpreted as a failure by petitioner to establish paternity without a conclusive finding that Johnson is not the father of Myron. However, we find it unnecessary to address the issue whether this is a valid judgment on the merits because the issue of privity is dispositive.

108, 115-16, 254 N.E.2d 10, 15 (1969)(child not in privity with parent; therefore *res judicata* not a bar).

█ Resolution of this issue of first impression in Virginia requires that we analyze the relationship of the mother and child with respect to paternity and support proceedings and inquire as to their respective interests. Based on the analysis that follows, we hold that a mother and child are not in privity when the prospective rights of a minor child to establish paternity are at issue, and the child is not bound by a paternity determination unless the child is formally named a party, represented by a guardian *ad litem* and given an adequate opportunity to litigate the issue.

Prior to July 1, 1988, proceedings to establish paternity could have been filed by the mother, putative father, the child, or appropriate state official. Code § 20-64 (now *see* Code § 20-49.2).[2] While Code § 20-64 authorized a mother to initiate proceedings to adjudicate paternity of the father and to obtain child support from the father pursuant to the provisions of § 20-61.1,[3] these Code sections did not expressly or by implication require a finding that the mother's interest in a determination of paternity and child support was so identified with the interest of the child that

---

[2] Code § 20-64 enumerated persons who could bring a paternity and support proceeding; however, it did not address the necessary parties to the proceeding in the context of the privity issue presented in this appeal.

The General Assembly resolved this issue with the enactment of Code § 20-49.2, which provides:

COMMENCEMENT OF ACTION; PARTIES. - Proceedings under this chapter may be instituted upon petition, verified by oath or affirmation, filed by a child, a parent, a person claiming parentage, a person standing in loco parentis to the child or having legal custody of the child or a respresentative of the Department of Social Services or the Department of Corrections.

The child may be made a party to the action, and if he is a minor and is made a party, he shall be represented by a guardian ad litem appointed by the court in accordance with the procedures specified in § 16.1-226 or § 8.01-9. The child's mother or father may not represent the child as guardian or otherwise. *The determination of the court under the provisions of this chapter shall not be binding on any person who is not a party.*

(emphasis added).

[3] Code §§ 20-61.1 and 61.2 have been repealed effective July 1, 1988. 1988 Va. Acts Chs. 866, 878. The General Assembly amended and recodified the subject matter covered previously under these code sections at Title 20, Chapter 3.1, "Proceedings to Determine Parentage." Code §§ 20-49.1 to 49.8 (Cum. Supp. 1988). These code sections, effective July 1, 1988, now establish the statutory guidelines and procedures for establishing paternity. *See* 1988 Va. Acts Chs. 866, 878.

the mother represented the same legal rights as the child. To the contrary, while the mother and child's rights may relate to the same subject matter, and may be coextensive to some extent, they are distinct. A less than exhaustive discussion of examples illustrates the actual and potential distinction between the rights and interests of the mother and the child.

An actual distinction rests in the right to child support. It is well settled that both parents owe a duty of support to their child. Where a child is born out-of-wedlock, the mother has an obvious interest in an adjudication of paternity and the consequent judgment for child support from the father to share her duty of support. However, the duty of support of all children is owed to the child, not the mother. The amount of the support is based primarily on the needs of the child and the ability of the father to provide, not the needs of the mother. Thus, the mother does not have the same legal right of the child in seeking child support; rather, the right is solely that of the child. The mother simply has the right to act as a conduit for the payments of support to the child. In addition to support rights during minority, the child has other individual and independent rights that may be derivative of the establishment of paternity, such as the right to inherit from his or her father pursuant to the provisions of Code § 64.1-5.2. The mother has no corrollary right and in this regard, the interest and rights of the child and mother are clearly distinct.

The child also has a fundamental right, not shared by the mother, to establish the father-child relationship, and in exercising that right there clearly is potential for conflict between the mother's interest and the child's interest.

> [T]he establishment of the parent-child relationship is the most fundamental right the child possesses to be equated in importance with personal liberty and the most basic constitutional rights. To hold a child bound prospectively by a finding of non-paternity in [an] . . . action in which a child [is] not a party would be to allow the conduct of the mother to foreclose the most fundamental right a child possesses in our system of jurisprudence.

*Ruddock*, 91 Cal. App. 3d at 277-78, 151 Cal. Rptr. at 91.

Notwithstanding the child's interest in establishing the father-child relationship, a mother may desire to prevent visitation by the father and avoid having to accommodate her daily routine with the father on a regular basis. Moreover, the mother may lack the same incentive as the child to establish paternity. For example, if she is receiving aid from the state for the support of the child, the financial incentive may not be present to pursue an action vigorously. As is apparent from this less than exhaustive discussion, the identity of interests between mother and child is less than total; moreover, their interests and rights are potentially divergent. A mother and child do not share common interests such that the child should be bound under the doctrine of *res judicata* by a judgment against the mother.

Finally, and perhaps most significantly, where a child is not made a party and not represented by an independent guardian *ad litem*, the child has no control over the litigation, and the integrity of the fact finding process may suffer. The child not a party and not adequately represented may not receive his or her day in court, and the fundamental due process right to be heard may be abridged. In addition to the right to support, other significant rights of the child may be lost or compromised by conflicting interests and less than zealous representation, as in this case, where Louise Gray was unrepresented by counsel in the intitial paternity action.

The strong public policy of this Commonwealth posits that the paramount concern where children are concerned are their best interests. This public policy would be thwarted if a child were bound by a paternity determination in which the child's independent rights and interests were not adequately protected. The courts of the Commonwealth have a long history of protecting the interests of minor children and have expressed that careful concern by ensuring that the rights and interests of the minors are safeguarded. Code §§ 8.01-9 and 16.1-266 require that guardians *ad litem* or counsel be appointed to represent a child's interests when the child is involved in court proceedings. Our Supreme Court has consistently held that a guardian *ad litem* must be appointed when the interests of infants are involved, *see, e.g., Moses v. Akers*, 203 Va. 130, 131-32, 122 S.E.2d 864, 865 (1961); *Kanter v. Holland*, 154 Va. 120, 122, 152 S.E. 328, 329 (1930), and unless the record affirmatively shows that a guardian *ad litem*

has been appointed, the judgment is void. *Id.* Thus, children who are not made parties to a paternity action are not bound by the judgment.

With the enactment of Code § 20-49.2, effective July 1, 1988, statutory law makes it clear that a child must be made a party to a paternity action if he or she is to be bound by a determination of paternity. Our decision is in full accord with this Code section which we believe expresses the legislature's intent to protect the rights and interests of children and their parents.

By requiring that a child be made a party to the action to be bound by its results, the integrity of the fact finding process is enhanced and the rights and interests of the child, which are paramount, are protected. The putative father, to ensure that he would not be subject to relitigation of the paternity issue, could have joined the child under Rule 3:9A, and may now join the child as a necessary party under Code § 20-49.2.

Having determined that (1) the mother's claim in 1983 was barred and (2) the child's claim in 1983 was not barred under the doctrine of *res judicata* because the child was not made a party to the 1981 action filed by the mother and the mother and child were not in privity, we turn now to the remaining issue whether *res judicata* is applicable to the petition to intervene *as filed* by the Division in the 1983 action.

Code § 63.1-276 (now Code § 63.1-251) permitted the Division to be subrogated to the rights of Louise Gray (mother/caretaker) or the child because Louise Gray was receiving public assistance for Myron. The Division's petition, however, contains the following language: "Pursuant to Sections 63.1-251 and 63.1-276, the Department of Social Services is subrogated to *Louise Gray's right* to enforce any child support obligation owed by any responsible person." (emphasis added). The prayer of the petition contains the following language: "That the Court order the Petitioner, Louise Gray; the Respondent, Alonzo Johnson; and the child, Myron O'Neil Gray, to submit to blood testing, including HLR testing, to determine whether or not the Respondent is the father of Myron O'Neil Gray." The trial court granted the petition to intervene and appointed a guardian *ad litem* to represent Myron's interests although he was not named a party defendant. Subsequently, the trial court sustained Johnson's plea of *res judi-*

*cata* and dismissed the Division's petition.

The simplistic resolution of the issue presented is to hold, as apparently the trial court did, that the Division in drafting its petition asserted only its rights as the subrogree of Louise Gray, and because her rights are barred, it is also barred. This resolution would certainly encourage more precise draftsmanship, and in that regard we are not critical of the trial court. Under this resolution, however, the Division or Myron would be free to file subsequent petitions against Johnson. Thus, "considerations of public policy which favor certainty in the establishment of legal relations, demand an end to litigation, and seek to prevent harassment of parties" as explained in *Bates*, would not be served. For these reasons we hold that the doctrine of *res judicata* is not applicable to any interest that the Division might have as subrogee of Myron. Accordingly, we reverse the order of the trial court only insofar as it dismissed the Division's petition on the grounds of *res judicata*, and remand for further proceedings including the amendment of the Division's petition to assert its rights as the subrogee of Myron, the naming of Myron as a party defendant and a determination of the merits of the paternity issue.

In summary, we hold that Louise Gray's claim in 1983 was barred under the doctrine of *res judicata*. The child's claim and the Division's claim as subrogee of the child were not barred in the 1983 proceeding because the child was not a party to the initial action filed by the mother in 1981, and the child and mother were not in privity. We affirm the trial court's dismissal of Louise Gray's petition and remand for further proceedings in accordance with this opinion including the amendment of the Division's petition to assert its rights as the subrogee of Myron, if the Division be so advised to amend its petition.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

Cole, J., and Moon, J., concurred.