# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

In re Ronda Henderson

October 5, 1992

Case No. 7530

BY JUDGE PAUL M. PEATROSS, JR.

This case comes before the court on a Motion to Vacate an Administrative Support Order and to Judicially Determine Support. The Petitioner, Ronda Henderson, is the natural mother of Samantha Henderson, age 3. Samantha's putative father, Marlin Kasemodel, lives in Clear Lake, South Dakota. The daughter does not live with her mother but, at the time this action was brought, resided with her maternal grandfather, Ronald Henderson. On March 29, 1991, the Respondent, Department of Social Services, Division of Child Support Enforcement, issued an Administrative Support Order requiring Ms. Henderson to pay $65.00 per month in current support and assessing a debt for public assistance paid through April, 1991, of $585.00. The amount of the current support obligation was determined according to the statutory guidelines set forth in Va. Code § 20–108.2.

## Discussion

Ronda Henderson first maintains that any debt created by the Administrative Support Order may not be collected from her at this time because she is currently receiving public assistance in the form of food stamps. Under Va. Code § 63.1–251:

> any payment of public assistance money made to or for the benefit of a dependent child or children or their caretaker creates a debt due and owing to the Department of Social Services by the person or persons who are responsible for

support of such children in an amount equal to the amount of public assistance money so paid.

*See also, Powers v. Department of Social Services*, 13 Va. App. 309, 310–11 (1991). Nonetheless, Ms. Henderson points out that a debt created by an administrative support order may not be collected from a responsible person who is the recipient of "public assistance *moneys" for the benefit of minor children. Since she is now receiv*ing food stamps for her two younger children, Michael, age 2, and Virginia, age 4 months, Ms. Henderson claims she falls under the statutory exception to § 63.1–251 and should not therefore be required to repay the welfare assistance received by her father, Ronald Henderson.

In interpreting § 63.1–251, this court is bound to give full force and effect to every word contained in the statute. *Jones v. Conwell*, 227 Va. 176, 181 (1984). A word or clause contained in a statute may only be rejected as surplusage if it appears to have been inserted through inadvertence or mistake and is incapable of any sensible meaning or is otherwise repugnant to the rest of the statute. *Burnette v. Commonwealth*, 194 Va. 785, 788–89 (1953). No part of a statute may be treated as meaningless unless absolutely necessary. *Garrison v. First Federal Savings and Loan of South Carolina*, 241 Va. 335, 340 (1991).

In order for Ms. Henderson to avoid the impact of § 63.1–251, she must demonstrate that the food stamps she is now getting for her children qualify her as a recipient of "public assistance moneys" as contemplated by the statute. To interpret the phrase in that way, however, would render the word "moneys" in § 63.1–251 superfluous. "Public assistance" is defined in § 63.1–87 and includes both monetary and non-monetary relief.[1] If, as Ms. Henderson suggests, this court were to interpret the phrase "public assistance moneys" to include non-monetary relief as well as monetary support, the word "moneys" would add nothing to the term "public assistance" and would be deprived of any effect. To ensure that the word "moneys" is given some meaning, then, this court must interpret the phrase "public assistance moneys" to exclude non-monetary public assistance, unless there is some strong public policy reason against such a result.

---

[1] Specific items qualifying as "public assistance" include aid to dependent children, grants to the aged, blind or disabled, medical assistance, food stamps, general relief, fuel assistance, and social services.

An examination of the underlying purposes of § 63.1–251 reveals no such policy concerns. When it exempted persons receiving monetary public assistance from the obligation of repaying prior support, the legislature simply avoided the meaningless and inefficient exercise of taking money from an individual with one hand while at the same time returning it with the other. This would always occur if the responsible parent were receiving monetary public assistance at the time the Department of Social Services sought repayment of prior public assistance.

In the case of non-monetary support, however, no such inefficiencies arise. While it is true that requiring an individual to repay prior public support under § 63.1–251 might reduce the effect of current public assistance being given to him, it would not eliminate it entirely. The Department of Social Services will still be able to bring about an exchange of money for non-monetary assistance, thereby affecting the individual's spending decisions.

Since the subjection of those receiving non-monetary assistance to the obligations of § 63.1–251 does not frustrate the underlying purpose of the statute, the court finds that the "public assistance moneys" exception applies only to those receiving actual monetary assistance from the Commonwealth. As a result, Ms. Henderson does not come under the statutory exception, and as Samantha's natural parent, is obliged to repay the support obligation in the amount of $585.00, pursuant to the Administrative Support Order of March 29, 1991.

### Application of Support Guidelines

Ms. Henderson also argues that the Department of Social Services improperly applied the support guidelines of Va. Code § 20–108.2 in her case, since it has made no attempt to ascertain the income of the first child's putative father, Marlin Kasemodel. Under Virginia law, a trial court must use the guidelines found in § 20–108.2 to establish the presumptively correct amount of monthly child support owed by a non-custodial parent. *Richardson v. Richardson*, 12 Va. App. 18, 19 (1991). Although the guidelines establish the basic child support obligation of both natural parents, the child will typically reside with one of the natural parents, so that no formal support will be forthcoming from the custodial parent.

In the case at bar, however, Samantha lives with neither her natural mother nor her putative father. Since Ms. Henderson believes that

the support obligation imposed on her by the Administrative Support Order was determined incorrectly, she now asks that this court vacate that Order and reapply the support guidelines, taking both parents' incomes into account.

The court cannot merely accept Ms. Henderson's word that Mr. Kasemodel is Samantha's natural father, though. Under Virginia law, the parentage of an unwed child must be proven by clear and convincing evidence. Va. Code § 20–49.4. The Virginia legislature has instituted a comprehensive procedure for determining the parentage of a child of unwed parents. Va. Code § 20–49.1. Under that procedure, which is civil in nature, proceedings to determine parentage may be instituted upon a petition, verified by oath or affirmation. Va. Code § 20–49.2. When a child is born out of wedlock, the duty of support is owed to the child and not to the mother. *Dept. of Social Services v. Johnson*, 7 Va. App. 614, 622 (1989). In order to protect the child's best interests, then, the child must be made a part to a paternity action if he or she is to be bound by the determination of paternity. *Id.* at 623.

To the court's knowledge, Ms. Henderson has yet to institute paternity proceedings under § 20–49.1, and she certainly has not proven that Mr. Kasemodel is Samantha's natural father by clear and convincing evidence. Furthermore, while the Department of Social Services has the statutory authority to commence a paternity action on its own, nothing in the Code places it under an affirmative obligation to do so. If Ms. Henderson wishes the help of the natural father in supporting Samantha, she may institute the appropriate proceedings to determine his identity under § 20–49.1. Until she does so, however, she will remain Samantha's only acknowledged parent and will be solely responsible for the support of her child.

Accordingly, the court finds that the Department of Social Services acted properly in fixing Ms. Henderson's support obligation at $65.00 per month, which is the minimum allowed under the guidelines. In any dispute regarding child care issues, the Commonwealth has an overriding interest in protecting the welfare of the child, even at the expense of the parent. *Kelley v Kelley*, 13 Va. App. 424, 427 (1991). Both natural parents are legally required to support and maintain their minor children, and § 20–108.2 is the only method which the court may employ in determining the extent of that obligation, *Id.* at 426. The court can see no valid reason why § 20–108.2 should not apply in cases where the identity of one of the natural parents has not yet been established.

Furthermore, if the court were to allow Ms. Henderson to postpone or otherwise avoid her support obligations to Samantha simply because the natural father has not yet been found, the best interests of the child would be seriously impaired. Not only would Samantha be denied any immediate support from her mother, but Ms. Henderson would lose any incentive to seek out the help of the natural father to support the child.

It was therefore both appropriate and necessary for the Department of Social Services to apply the guidelines of § 20–108.2, despite the absence of the natural father, in order to safeguard the interests of the child. As a result, the court concludes that the presumptive amount of Ms. Henderson's basic monthly support obligation is $65.00.

### Rebutting the Presumption

In spite of the fact that the statutory guidelines were correctly applied in her case, Ms. Henderson notes that the amount of child support indicated is simply the presumptively correct amount. Va. Code § 20–108.1(B). She contends that her support obligation should be reduced due to her youth, inexperience, lack of education, and the costs of raising her two younger children.

Va. Code § 20–108.1(B) specifies that, in any proceeding on the issue of determining child support, the court will consider all evidence relevant to any issues joined in that proceeding. The court is not bound to apply the guidelines for child support set out in § 20–108.2 but may adjust the scheduled amount based on one or more specific factors set forth in either § 20–108.1 or § 20–107.2. *Scott v. Scott*, 12 Va. App. 1245, 1249 (1991). The reasons justifying such a variation must be from among those factors listed in the statute, however, and must be expressed in written findings sufficient to permit an effective appellate review of the exercise of the trial court's discretion. *Richardson*, 12 Va. App. at 21.

In the case at bar, Ms. Henderson has raised issues relevant to three separate statutory factors. First, her claims of youth and inexperience in the job market properly come under § 20–108.1(11), which allows the court to vary the statutory amount in light of the "earning capacity, obligations and needs, and financial resources of each parent." Under the circumstances of this case, however, the court sees no reason to depart from the statutory amount. Ms. Henderson is now 20 years old and is physically able to work. She has

worked at several local businesses in the past, albeit for relatively low wages. The mere fact that she is unable to find more rewarding employment is no reason to disregard the guidelines, since they already take the parent's income into account.

Next, Ms. Henderson asserts that her lack of education and formal training renders her less capable of finding productive work, resulting in a lowered earning capacity and justifying a reduction in her child support obligation. This claim falls directly within the scope of § 20–108.1(12). In this case, however, the Administrative Support Order makes no attempt to impute to Ms. Henderson an earning capacity beyond her means. Rather, she has been charged only with the minimum amount of child support required under the Code, or $65.00 per month. Even if she is capable of finding only a minimum-wage job, Ms. Henderson should be able to meet this minimal obligation to her first-born child. Accordingly, the court finds that a departure from the guidelines due to Ms. Henderson's lack of education would be unwarranted.

Finally, Ms. Henderson contends that her child support obligation to Samantha must be lowered due to the burden of raising her two subsequent children. Before the adoption of Code § 20–108.1, Virginia law gave little or no consideration to the need to support a new family when determining the amount of support for children of a prior relationship. *Edwards v. Lowry*, 232 Va. 110, 113 (1986); *Farley v. Liskey*, 12 Va. App. 1, 3 (1991). Under Code § 20–108.1(1), however, the court may consider "actual monetary support for other children, other family members or former family members" in determining a child support obligation. *Farley*, 12 Va. App. at 4. This statutory factor is limited to "actual monetary support," however, and non-monetary contributions to other children may not be considered. *Id.*

In the instant case, Ms. Henderson has presented no evidence that she provides any "actual monetary support" for her later children, so has failed to bring herself within the scope of Code § 20–108.1(1). Having considered each of the relevant statutory provisions under § 20–108.1 and § 20–107.2, the court can find no reason to vary Ms. Henderson's support award from the amount determined under the guidelines. Consequently, the court orders her to provide monetary support to her daughter, Samantha Henderson, in the amount of $65.00 per month, as specified in the Administrative Support Order of March 29, 1991.