# CIRCUIT COURT OF THE CITY OF NORFOLK

Thomas A. Smith et al.

v.

City of Norfolk et al.

July 31, 2001

Case No. (Law) L00-1760

BY JUDGE LYDIA CALVERT TAYLOR

This matter is before the Court on the Defendants' Motion to Vacate the filing of Plaintiff's Motion for Judgment. For the following reasons, this Court sustains the Defendants' Motion to Vacate the filing of the Plaintiffs' Motion for Judgment and dismisses the case with prejudice.

*Facts*

The Plaintiffs, Thomas and Annette Smith, husband and wife, allege they were the partners in a Virginia general partnership known as Atlantic Association, which leased certain real property with option to purchase from Melvin J. Nelson. Shortly thereafter, Atlantic Association contracted to sell the property to Man-Jac Construction Company, Inc. That contract was subject to certain contingencies, one of which was that Man-Jack be granted a use permit by the City of Norfolk to enable it to construct 45 two-bedroom apartment units thereon; the contract was voidable by Man-Jac if the use permit were not to be granted. Man-Jac thereafter applied for the permit, which, though approved by the City Planning Commission, was not approved by the City Council. Man-Jac learned in June 1989 — and the Plaintiffs learned the following month — that the City Council had not approved the use

permit,[1] in response to which Man-Jack wrote Plaintiffs on June 20, 1989, that it was exercising its right to void the contract as a result of its inability to obtain the necessary use permit.

Plaintiffs allege that Jack Jacovides, the principal of Man-Jac, advised them in July 1989 that pressure was coming from "high up" not to issue the permit; that the City did not want apartments built on the property (the property was zoned for business); that the City did not want any more apartments in the City anyway; that the City had become known as the black rental community; that the City was trying to force the black community out of Norfolk; that all Jacovides had been dealing with was renting to blacks; and that the City would go with four-family duplexes, but not apartments.

## Procedural History

The Plaintiffs have filed a number of lawsuits based on the identical set of facts alleged here.

First, Case 2:92cv56 was filed in the U.S. District Court for the Eastern District of Virginia, Norfolk Division, on January 21, 1992, by Thomas and Annette Smith against the City of Norfolk, the Norfolk City Council, the Norfolk City Manager, and Ronald W. Massie. The causes of action were (1) a civil rights action under 42 U.S.C. §§ 1981 and 1982, and (2) violation of the plaintiff's due process rights under the 14th Amendment to the U.S. Constitution. The case was dismissed on August 6, 1992, because the two-year personal injury statute of limitations (not the five-year property damage statute of limitations claimed by the Plaintiffs in their pleadings in this case) had expired and because of insufficient evidence.[2]

Case Number CL92-1293 was next filed in Norfolk Circuit Court on April 20, 1992, on the same facts, again by Thomas and Annette Smith and against the City of Norfolk, the Norfolk City Council, the Norfolk City Manager, and Ronald W. Massie as defendants. The causes of action were (1) negligent and intentional infliction of emotional distress, (2) statutory conspiracy, and (3) tortious interference with business. That case was nonsuited by plaintiff on August 23, 1993, just after the trial court indicated it would sustain defendants' demurrers.

---

[1] Upon inquiry, Plaintiffs were advised by the Assistant City Manager that the application was denied because the construction would create a traffic problem.

[2] The U.S. Court of Appeals for the Fourth Circuit, on February 12, 1993, affirmed the federal district court's dismissal of the case.

The third incarnation of these actions was Case Number CL93-4428, filed in Norfolk Circuit Court on December 2, 1993, by Thomas and Annette Smith, again against the City of Norfolk and Ronald W. Massie, but this time adding Man-Jac Construction Co., Inc., and Jack Jacovides. The causes of action were (1) negligence; (2) intentional interference with business relationship; (3) breach of contract; (4) conspiracy to interfere with contract (tortious interference); and (5) conspiracy to injure plaintiffs in their business (a second count of tortious interference). On June 8, 1994, this court sustained the defendants' demurrers on all counts and dismissed the case, holding for all counts that Thomas and Annette Smith were not the proper parties in the case and that the suit should have been brought in the name of Atlantic Association, a general partnership having Thomas and Annette Smith as the general partners. Specific additional reasons were given for dismissing each count: (1) Count One: no statutory notice was given and the two-year personal injury and three-year contract statutes of limitations had expired; (2) Count Two: insufficient evidence; (3) Counts Three, Four, and Five: causes of action barred against Man-Jac on the basis of *res judicata* and collateral estoppel, based on the previously litigated case of *Man-Jac v. Atlantic Associates* (see *infra*); (4) Counts Four and Five: failure to state a cause of action for conspiracy or tortious interference. The petition for appeal was denied by the Supreme Court of Virginia on January 3, 1995.

Less than six months after that affirmation of the judgment adverse to them in CL93-4428, Plaintiffs filed Case Number CL94-2833 in Norfolk Circuit Court on June 20, 1994, against the City of Norfolk, Ronald W. Massie, Man-Jac Construction Co., Inc., and Jack Jacovides.[3] The causes of action were (1) interference with business relationship; (2) breach of contract; (3) conspiracy to interfere with contract; (4) conspiracy to injure plaintiffs in their business; (5) violation of due process; and (6) negligence. The court sustained the defendants' demurrers and pleas in bar on all counts and dismissed the case with prejudice on May 19, 1995, with no specific grounds stated. The court in that case also entered an order on May 19, 1995, which stated:[4]

Any pleadings, papers, or other filings by Thomas Smith, Annette Smith, or anyone in privity with them or filing for them, whether in

---

[3] The Smiths added MAACK, Inc., as a plaintiff in that action.

[4] The petition for appeal in CL94-2833 was denied by the Supreme Court of Virginia on December 20, 1995; thus that order has become a final order of this Court, not subject now to collateral attack in this new suit.

this action or any new cause of action against any of the defendants, is subject to a judicial review by a judge of this court prior to the clerk's filing the same and that the judge shall direct whether or not the submission is a meritorious filing and whether or not it should be filed with the clerk.

Case number CL95-959, filed by Thomas Smith alone on March 27, 1995, sued the City of Norfolk, Ronald W. Massie, Man-Jac Construction Co., Inc., and Jack Jacovides, as before, but added the law firms of Crenshaw, Ware & Martin; Knight, Dudley, Dezern & Clarke; Williams, Kelly & Greer, and attorneys Ann K. Sullivan, William M. Sexton, Timothy S. Brunick, and Jack E. Greer, attorneys for the defendants in some of the prior suits by the Smiths. The causes of action were (1) denial of due process (false statements of material fact made to the court in previous litigation); (2) emotional distress; and (3) conspiracy by the attorneys to injure the plaintiff in his business. The court sustained the defendants' demurrers and motions for summary judgment and dismissed the case with prejudice on May 19, 1995. The court's order of May 19, 1995, *supra*, was also entered in CL95-959.[5] Again, the petition for appeal in CL95-959 also having been denied by the Supreme Court of Virginia on December 20, 1995, that order as well became a final order of this Court.

Case number CL98-1367 was then filed in Norfolk Circuit Court on May 27, 1998, this time by not only Thomas and Annette Smith, but also by Atlantic Association and MAACK, Inc., but again against the City of Norfolk, Ronald W. Massie, Man-Jac Construction Co., Inc., Jack Jacovides, and attorneys Ann K. Sullivan, William M. Sexton, and Jack E. Greer. The causes of action were (1) fraud and deceit of the court (conspiracy); (2) denial of due process by Massie, Man-Jac, and Jacovides; and (3) conspiracy to injure plaintiffs' business and tortious interference with plaintiffs' business. The plaintiffs requested and were granted a nonsuit as of right on February 8, 1999, although an order was not entered to that effect until March 10, 2000.

Case number CL99-1917 was filed in Norfolk Circuit Court on August 6, 1999; it represented the refiling of the nonsuited case CL98-1367, again by

---

[5] That order, identical to the one entered in CL94-2833, reads as follows: "Any pleadings, papers, or other filings by Thomas Smith, Annette Smith, or anyone in privity with them or filing for them, whether in this action or any new cause of action against any of the defendants, is subject to a judicial review by a judge of this court prior to the clerk's filing the same and that the judge shall direct whether or not the submission is a meritorious filing and whether or not it should be filed with the clerk."

Thomas and Annette Smith, Atlantic Association, and MAACK, Inc., this time again against the City of Norfolk, Ronald W. Massie, Man-Jac Construction Co., Inc., Jack Jacovides, and attorneys Ann K. Sullivan, William M. Sexton, and Jack E. Greer. The causes of action were (1) denial of due process by Massie, Man-Jac, and Jacovides; and (2) conspiracy to injure plaintiffs' business (tortious interference). On February 4, 2000, the plaintiffs requested and were granted a second (permissive) nonsuit of that case.

The instant case, Case number CL00-1760, was filed in Norfolk Circuit Court exactly one day within the six months permitted for refiling, on August 3, 2000, by Thomas and Annette Smith, Atlantic Association, and MAACK, Inc., again suing the City of Norfolk, Ronald W. Massie, Man-Jac Construction Co., Inc., Jack Jacovides, and attorneys Ann K. Sullivan and William M. Sexton (Jack Greer had meanwhile died). The causes of action again were: (1) denial of due process by Massie, Man-Jac, and Jacovides; (2) conspiracy to injure Plaintiffs' business (tortious interference); and (3) fraud and deceit on the court (conspiracy).

Over ten years earlier, on November 13, 1989, Case number CL89-3005 had been filed in Norfolk Circuit Court by Man-Jac Construction Co. against Atlantic Association and Thomas Smith, for breach of contract for the sale of real property.[6] Man-Jac had alleged in CL89-3005 that it had deposited $15,000 with the defendants, Thomas Smith and his partnership, and that the deposit was to have been given to Man-Jac within five days if certain contingencies were not met, including the obtaining of a use permit. Man-Jac further had alleged that the contingencies had not been met and had demanded that the defendant return the deposit, which demand the defendants had refused. The court entered a default judgment in favor of Man-Jac against both defendants, Thomas Smith and Atlantic Association, on December 29, 1989. That judgment, not appealed, became final.

The issues in the instant case are (1) whether Mr. and Mrs. Smith were barred from filing the instant suit without prefiling approval of a judge of this Court in accordance with the May 15, 1995, orders of the court, and (2) whether Mr. and Mrs. Smith were barred from filing without preapproval or not, should the Defendants' demurrers and special plea be sustained.

---

[6] That suit's resolution was, in part, the basis for the dismissal of Counts 3, 4, and 5 of CL93-4428 on the grounds of collateral estoppel and *res judicata* on the count involving breach of contract, tortious interference with contract, and conspiracy to injure plaintiffs in their business.

## *Discussion*

### *The May 15, 1995, Orders*

The first issue with regard to the court's May 15, 1995, orders establishing a prefiling requirement is whether the court had the power to enter such orders. There have been instances of prefiling requirements being established in Norfolk Circuit Court, normally *in forma pauperis* filings that required, because of vexatious filings by a particular (usually *pro se*) litigant, a determination of whether the litigants were repeating matters that had already been raised previously and decided adverse to the litigant. There are no Virginia appellate decisions on point; however, there exists federal appellate case law that indicates that the federal courts have such power. *Graham v. Riddle*, 554 F.2d 133 (4th Cir. 1977) (upholding a federal district court's pre-filing review system for repetitive *in forma pauperis* cases). Virginia state courts are courts of general jurisdiction; they inherited all the powers at common law that courts had prior to independence from Great Britain. On the other hand, the federal courts are courts of limited jurisdiction in the sense that the constitution and statutes lay out what the courts' powers are. The All Writs Act, 28 U.S.C. § 1651, is a federal statute, which states that it has given courts the jurisdiction they enjoyed at common law. Federal appellate courts have interpreted that Act as giving the federal courts power to limit the filing of suits that have been filed repeatedly and that have caused defendants to be forced to repeatedly defend themselves against the same causes of action.

Therefore, based on the federal jurisdictional powers to enjoin the filing of repetitious, vexatious lawsuits without prefiling approval, and the analogy to Virginia courts, which enjoy general jurisdiction by statute, this Court holds that Virginia state courts have the power to entertain a petition for a prefiling requirement and to enter a prefiling order in an appropriate case. Having determined that this Court had the jurisdiction to enter such an order, which has since become final, it is not the role of the undersigned to second-guess whether it was an appropriate order to enter in those cases. It is up to the undersigned to apply that order in this case.

The next issue is whether the prefiling orders were void in light of the fact that the Plaintiff was neither present for the entering of the order, nor did the Plaintiff sign the prefiling orders. The Virginia Supreme Court addressed this issue in *Napert v. Napert*, 261 Va. 45, 540 S.E.2d 882 (2001), a case in which a wife asserted a divorce decree was void because it was entered in violation of Rule 1:13, specifically, that the decree did not comply with the rule's

endorsement or notice requirements. The Court of Appeals had held in that case that, because the decree contained neither the endorsement of the wife or her counsel nor a dispensation of the endorsement by the court, the decree was "facially erroneous and void." The Supreme Court, however, reversed the Court of Appeals, holding that a court need not affirmatively state in its order that it is modifying or dispensing with the requirements of Rule 1:13. *Id.* at 883-84. The state Supreme Court stated that, although it would be better practice for a court to so state, in the absence of such a statement, it is presumed that a trial court exercised its discretion to dispense with the Rule's requirements. *Id.* at 884. The Supreme Court again held in *Whiting v. Whiting*, 262 Va. 3 (2001), that "a decree or order entered in violation of Rule 1:13 is merely voidable, not *void ab initio*" (citing *Napert v. Napert*, 261 Va. 45, 540 S.E.2d 882 (2001), and *Singh v. Mooney*, 261 Va. 48, 541 S.E.2d 549 (2001)). "A voidable decree or order is not subject to collateral attack and must be challenged within 21 days of its entry pursuant to Rule 1:1, by a bill of review within the time prescribed by Code § 8.01-623, or by an independent action pursuant to Code § 8.01-428." *Whiting*, 262 Va. at 3 (citing *Singh*, 261 Va. at 51-52, 541 S.E.2d at 551). Therefore, the prefiling orders in the instant case, as in *Napert*, were voidable, but not void, and are presumed to have been entered in accordance with Rule 1:13; more than 21 days having passed since their entry; those orders have become final and are no longer voidable.

The prefiling orders, being voidable only, could have been attacked on direct appeal of the cases in which they were entered, yet Plaintiff failed to do so. The Plaintiff appealed the orders dismissing each of the previous cases (CL94-2833 and CL95-959), and, in each of those appeals, raised the issues of his absence from the court and the court's refusal to give him a continuance, but the Plaintiff on appeal, failed to ask the appellate court to vacate the prefiling orders. Therefore, this Court finds that the orders became final and were not appealed and, further, that the issue of the validity of the prefiling orders has further been resolved by the Plaintiff's appeals in CL94-2833 and CL95-959, which cases were upheld by the Virginia Supreme Court — including the prefiling orders, whether specifically appealed or defaulted by failure to raise any issues as to those orders.

The next issue is whether the May 15, 1995, prefiling orders bind as well Atlantic Association, a Virginia general partnership, in which Plaintiffs Thomas and Annette Smith serve as general partners, and MAACK, Inc., a Virginia corporation of which Plaintiffs Thomas and Annette Smith are the sole stockholders. The Plaintiffs stated at the March 19, 2001, hearing in the case that MAACK, Inc., is a defunct corporation, and moved to dismiss

MAACK, Inc., as a plaintiff in this case; this Court, with the agreement of all parties, therefore agreed to dismiss MAACK, Inc., as a plaintiff in this case, with prejudice. Therefore, MAACK, Inc., is no longer a litigant in this case. The issue of who is bound by the prefiling orders then is limited to whether Atlantic Association is in privity with the Smiths so as to be jointly bound by any prefiling requirements that were binding on the Smiths.

Plaintiff Smith asserts that Atlantic Association is not in privity with the Smiths for a novel and unpersuasive reason. He cites the court's June 8, 1994, order disposing of case number CL93-4428, in which the court dismissed all five counts on the ground that the named parties were not the proper parties to the suit and that the suit should have been brought in the name of Atlantic Association. In CL93-2448, the court necessarily found that, because Atlantic Association had a sales contract with Man-Jac, the culmination or closing of which was thwarted by the failure of the City to grant the use permit, Atlantic Association had the right to the property and the right to bring CL93-2448, and therefore, the suit was not brought in the name of the proper party.

The court, however, also sustained Man-Jac's demurrer to Counts Three, Four, and Five in CL93-4228 on the basis that the matter previously litigated in *Man-Jac v. Atlantic Association*, CL89-3005, supported defendants' pleas of *res judicata* and collateral estoppel. In order for the court in L93-4428 to apply *Man-Jac v. Atlantic Association* to Plaintiffs Thomas and Annette Smith and dismiss Counts Three, Four, and Five on the basis of *res judicata*, the court must have found identity of the parties, identity of the issues, and mutuality, and the judgment must have been a final judgment on the merits. *CDM Enterprises, Inc. v. Commonwealth/Manufactured Housing Bd.*, 32 Va. App. 702, 709, 530 S.E.2d 441, 445 (2000) (quoting *Commonwealth ex rel. Gray v. Johnson*, 7 Va. App. 614, 618, 376 S.E.2d 787, 789 (1989)). The doctrine of *res judicata* applies not only to the actual parties in a case but also to those in privity with them. *CDM Enterprises, Inc.*, 32 Va. App. at 710, 530 S.E.2d at 445 (citing *City of Virginia Beach v. Harris*, 259 Va. 220, 229, 523 S.E.2d 239, 243 (2000)). In other words, *res judicata* applies to anyone "so identified in interest with [a party] that he represents the same legal right, precisely the same question, particular controversy, or issue." *Johnson*, 7 Va. App. at 618, 376 S.E.2d at 788. In order for the Court in L93-2448 to apply *Man-Jac v. Atlantic Association* defensively to Plaintiff Annette Smith, who was not a named party defendant in the Man-Jac suit, the court necessarily had to have found privity between Atlantic Association and plaintiff Annette Smith. Otherwise, the Court could not have properly applied *res judicata*, under Virginia law, by means of a suit in which Mrs. Smith was not a named defendant but Atlantic Association was.

The Smiths and Atlantic Association are in privity because they have the same interest in the matter. The cases from the Virginia Supreme Court are clear that in the case of a partnership — although the partnership must be named as a party if it was in fact the party to the contract and the contract was signed in the name of the partnership — the real parties at interest are the general partners, who are jointly and severally liable for the debts of the other partners, thus placing them in privity with one another, as each have the same interest. *Equity Investors, Ltd. v. West*, 245 Va. 87, 425 S.E.2d 803 (1993). *See also Reid v. Ayscue*, 246 Va. 454, 436 S.E.2d 439 (1993) (statutory beneficiaries were bound by results of wrongful death actions brought by personal representative of the estate, as they were real parties in interest). In CL93-4428, the partnership signed the contract and was the proper party to bring the lawsuit, the court ruled, but the parties who stood to lose, ultimately, were the general partners, the Smiths. Therefore, the Smiths and the partnership had the same interests and were in privity as to the issues being adjudicated in the both CL93-4428 and the instant case for purposes of issue preclusion. To the extent that Atlantic Association was damaged, that damage grew out of the exact same set of events, that is, Atlantic Association's signing of a contract to sell to Man-Jac. To the extent that Man-Jac did not fulfill the contract because a condition of the contract, obtaining a use permit, was not carried out, the seller was out the purchase money as the contract could not be fulfilled. Thus, the loss to Atlantic Association is directly the loss to the Smiths, who, by virtue of the identity of their interests in the matters brought in the suits, are in privity with Atlantic Association. Thus, all the matters asserted in the instant suit by Atlantic Association, including the conspiracy of the City and the financial losses from not being able to carry out the contract, are identical to those matters raised by the Smiths in the prior suit.

The Plaintiff appealed the June 8, 1994, order; the Virginia Supreme Court denied the petition for appeal on January 3, 1995. Therefore, the June 4, 1994, order is a final order and is binding, insofar as it found that the proper parties that should have brought the suit were Atlantic Association and — as a necessary subfinding, in order to apply *res judicata* and collateral estoppel from *Man-Jac v. Atlantic Association* to Annette Smith — that Annette Smith, as a general partner, was in privity and enjoyed an identity of interest with Atlantic Association.

Therefore, the prefiling requirement that was applicable to the Smiths in the May 19, 1995, order, is applicable as well to Atlantic Association, because all of the aspects of *res judicata* and collateral estoppel are present: (1) the order requiring prefiling was a final order of the Court; (2) the order was a ruling on the merits; (3) the order directly decided the issue of whether there

had to be a prefiling by the parties of any cause of action against these defendants; and (4) the order bound the identical parties, because there was privity of interest of those parties in the subject matter of the lawsuits. Therefore, this suit should not have been filed before gaining prefiling approval of this Court, pursuant to the May 15, 1995, orders of this Court.

### Defendants' Demurrer and Special Plea

This Court, however, will address the merits of the cause of action in each count, assuming *arguendo* that the Plaintiffs were not barred from filing the instant suit without prefiling approval and will rule on the issues presented in the Defendants' demurrers and special pleas.

### Count One: Denial of Due Process

Count One alleges denial of due process by Defendants the City of Norfolk, Massie, Man-Jac, and Jacovides arising from the denial of the use permit. This Count was decided adversely to the Plaintiffs in federal court in case 2:92cv56 because the two-year statute of limitations had expired; that decision was upheld on appeal. This Count was also decided adversely to the Plaintiffs in CL94-2833 and CL95-959; those decisions were also upheld on appeal. This Count therefore is barred under *res judicata* and collateral estoppel, and this Court sustains the Defendants' demurrer on Count One.

### Count Two: Conspiracy to Injure Plaintiffs' Business

Count Two alleges a conspiracy to injure Plaintiffs' business on the part of Defendants Sullivan and Sexton. The Plaintiffs first alleged this conspiracy in CL95-959, which was decided adversely to the Plaintiffs and affirmed on appeal. This Count was alleged again in CL98-1367, and that case was voluntarily nonsuited. The Plaintiffs failed to reassert this conspiracy in CL99-1917 and, as such, are barred from realleging this conspiracy again in the instant case. The statute of limitations for contract claims is three years; because any alleged conspiracies must have taken place during the March 28, 1994, and May 19, 1995, hearings, the statute of limitations on this alleged conspiracy has expired.

The summary in the Motion for Judgment also mentions an alleged conspiracy on the part of Defendants the City of Norfolk, Massie, Man-Jac, and Jacovides with regard to the use permit. This claim was litigated and decided adversely to the Plaintiffs in CL93-4428 and CL94-2833 and affirmed

on appeal. This claim also is barred by principles of *res judicata* and collateral estoppel, and this Court accordingly sustains the Defendants' demurrer on Count Two.

### Count Three: Fraud and Deceit on the Court

Count Three alleges fraud and deceit on the court on the part of Defendants Sullivan, Sexton, and Greer, during the March 28, 1994, and May 19, 1995, hearings in the previously filed cases. The Plaintiffs first asserted Count Three in its pleadings in CL98-1367, for which case it subsequently took a voluntary nonsuit. Again, the Plaintiffs failed to reassert this claim in CL99-1917, for which they subsequently were granted a second (permissive) nonsuit. Thus, those claims are barred by the statute of limitations, as any cause of action on those claims arose in 1994 and 1995, when the hearings took place. The statute of limitations for fraud, including fraud that results in injury to property, is two years, and the statute of limitations on contract claims is three years. The statute of limitations on this Count has thus expired, and because the Plaintiffs did not reassert this claim when they filed CL99-1917 after taking a nonsuit, they are barred from asserting this claim in the instant suit. Therefore, this Court sustains the Defendants' demurrer on Count Three.

### Conclusion

In summary, this Court's findings are as follows. First, the instant case was required to be prefiled by Atlantic Association and Thomas and Annette Smith in accordance with the court's May 19, 1995, order. The case was not prefiled and was thus in violation of the Court's orders. Second, even if the case was not filed in violation of the prefiling order, the final rulings in cases 2:29cv56, CL92-1293, CL93-4428, CL94-2833, and CL95-959, which were adverse to the Smiths and the appeals of which rulings were all denied, are binding on Plaintiffs, Mr. and Mrs. Smith, as well as Atlantic Association, with which they were in privity, under the doctrines of *res judicata* and collateral estoppel, and thus the Plaintiffs are barred from re-asserting them.

This Court thus sustains the Defendants' Motion to Vacate the filing of the Plaintiffs' Motion for Judgment and orders the Plaintiffs to refrain from refiling any of its previous claims against these Defendants. Any *new* claims must be presented to this Court's Chief Judge before filing, for prefiling clearance, pursuant to the 1995 orders. It is way past time for this Court to put these matters to permanent rest.