# CIRCUIT COURT OF THE CITY OF RICHMOND

Commonwealth of Virginia et al.

v.

Supportkids, Inc.,
d/b/a Child Support
Enforcement

## Case No. CL08-728

BY JUDGE MELVIN R. HUGHES, JR.

### October 1, 2008

In an Amended Complaint seeking relief for an injunction, damages, civil penalties, and declaratory and *quo warranto* relief, the Commonwealth of Virginia, by the Governor, the Attorney General, and the Virginia Department of Social Services Division of Child Support Enforcement (DCSE) allege, as *parens patriae*, that the defendant, Supportkids, Inc., a Texas corporation, is and has been conducting illegal child support collection practices. The defendant has filed a demurrer.

The Amended Complaint alleges that the defendant, otherwise known as Child Support Enforcement (CSE), has acted on unlawful assignments of child support obligations, has attempted to illegally modify child support obligations, has improperly directed employers to send payments to it instead of the Virginia Department of Child Enforcement (DCSE), has improperly directed payments to itself without crediting non-custodial parents or apportioning payments among any other children of the non-custodial parent, converted payments due children and the Commonwealth of Virginia, is practicing law without authority, and is engaged in fraud.

The facts stated in the Amended Complaint and plaintiffs' contentions can be more specifically summarized as follows. Defendant contracts with parents to collect child support for a fee. It directs employers to withhold amounts from wages due non-custodial parents and to forward those amounts to its offices in Texas. It then retains a portion of the amount it receives from such withholdings and sends the balance on to the custodial parent. By taking a percentage fee (34%) from the amount received from the owing parent or employer, defendant is taking money that is designated by Virginia courts as owed to the child thereby improperly reducing or modifying the amounts owed. Under Virginia law, a support order cannot be modified absent a judicial or administrative order.

Virginia policy, through its Division of Child Support Enforcement, does not permit obligor parents to change payment addresses to a collection agency. The Division sends payments directly to the parents. Defendant circumvents this practice by deceptive practices to induce employers to send money to it rather than to the custodial parent by way of the Division when the Division may already have a withholding order in place. When defendant takes its fees from child support payments, which may include amounts not designated for arrearages, obligor parents may not receive proper credit for current support obligations because defendant's operations are outside the Division's automated system. In addition, parents may not receive credit for the fraction of the payments that apply to the fees assessed by the defendant.

As to conversion, plaintiffs contend that Virginia has a direct financial interest in child support payments because many of them represent reimbursement of public benefits previously paid to custodial parents on behalf of children. Even though defendant may ask a parent whether they have received public assistance, this cannot be checked for accuracy. As a result, payments to which Virginia is entitled go to the defendant instead.

Defendant's action of supplying lawyers to enforce support obligations constitutes the unauthorized practice of law because defendant selects and employs counsel and negotiates and pays attorney's fees along with directing the attorney's actions. This amounts to supplying legal services for consideration, which is the unlawful practice of law without a license.

Finally, by trading itself as CSE, defendant *inter alia* fraudulently and deceptively markets itself as similar to DCSE in its practices, using "investigators," and threatening criminal action against non-custodial parents.

In its demurrer, the defendant questions the right and authority of the plaintiffs as asserted *parens patriae* generally and questions whether the Court can exert jurisdiction when plaintiffs have failed to join all necessary parties, that is, custodial parents with whom it has contracted and whose contracts they

seek to invalidate. Without them, the Commonwealth plaintiffs lack standing. Further, defendant contends that no support claims have in fact been assigned nor support orders modified; and the statutes, regulations, and policies plaintiffs rely on do not apply to it. Admittedly, it acts on permission given by parents; thus, there is no conversion. Plaintiffs cannot claim unjust enrichment because their own allegations admit the existence of actual contracts which preclude any equitable remedy based on quasi contract. Continuing, defendant argues that plaintiffs' claims under the Virginia Consumer Protection Act fail because the Complaint alleges that fees and costs are disclosed to custodial parents; thus, the Complaint fails to allege material facts and detrimental reliance by parents. Further, there is no "consumer transaction" as defined in the Act. Common law claims of fraud and claims under the Act fail for lack of particularity. Lastly, defendant contends that plaintiffs lack standing under Texas law because the Texas statutes they rely on cannot be applied extra-territorially. Injunctive relief is not available because no prior notice was given before suit under Va. Code § 59.1-203(B) and no claim for unauthorized practice of law is stated because such violations cannot be a private right of action for money damages.

In deciding a demurrer, the court uses the well-established principle that the demurrer admits the truth of the facts contained in the pleading at issue, as well as any facts that may be reasonably and fairly implied and inferred from the allegations. *Cox Cable Hampton Roads, Inc. v. City of Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991). At the same time, a demurrer does not admit the correctness of the pleading's legal conclusions. *Ward's Equipment, Inc. v. New Holland North Am., Inc.*, 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997).

The issues of *parens patriae* and standing are overarching in this case. *Parens patriae* literally means "parent of the country" referring traditionally to the role of the state as sovereign of persons under legal disability. *Alfred L. Snapp & Son v. Puerto Rico, ex rel. Bares*, 458 U.S. 592, 102 S. Ct. 3260, 73 L. Ed. 2d 995 (1982). The doctrine is defined as that power of the Commonwealth to watch over the interests of those who are incapable of protecting themselves. *Verroechio v. Verroechio*, 16 Va. App. 314, 429 S.E.2d 482 (1993). Under Va. Code § 2.2-111(B), "the Governor may institute any action, suit, motion, or other proceeding on behalf of its citizens, in the name of the Commonwealth, acting in its capacity as *parens patriae*, where he has determined that existing legal procedures fail to adequately protect existing legal rights and interests of such citizens."

Regarding rights to child support, the Court has stated in *Commonwealth, ex rel. Gray v. Johnson*, 7 Va. App. 614, 622, 376 S.E.2d 789, 791 (1989), that "the duty of support of all children is owed to the child,

not the mother." The Court also said that "the mother does not have the same legal right of the child in seeking child support; rather the right is solely that of the child . . . [t]he mother simply has the right to act as a conduit for the payments of support to the child." *Id.* In *Kelley v. Kelley*, 248 Va. 295,298, 449 S.E.2d 55, 56 (1994), the Supreme Court of Virginia stated "parents cannot contract away their children's rights to support nor can a court be precluded by agreement from exercising its power to decree child support." *Id.* Thus, the law does not vest ownership of child support payments in children, but they are owed child support which their parents have a duty to provide. So, considering the Commonwealth's claims, the case raises significant issues respecting children's rights to unfettered support payments. On demurrer to this complaint, though otherwise well stated, the Court will take the view that some claims are appropriate to advance by the Commonwealth, while others are not.

The demurrer does not question the Governor's authority to bring a *parens patriae* action but observes, as this Court does, it "is far from certain that the Governor has the power to proceed as *parens patriae* in a muddled state/private interest case of this nature." (Defendant's Memorandum in Support of Demurrer 5.) And arguably, given the rights and obligations between parent and child regarding child support, existing legal procedures may not be in place to adequately protect the rights of children owed child support, the condition set out in Va. Code § 2.2-111.

To the extent that the pleadings seek to recover money damages for parents or children allegedly wronged by defendant's practices, such recovery is not allowed under *parens patriae*, as the role of *parens patriae* is not to vindicate the personal rights of citizens. *Board of Supervisors of Fairfax County v. United States*, 458 F. Supp. 556, 566 (E.D. Va. 1976). This applies to the counts for conversion where plaintiff seeks in the Complaint to recover damages in "an amount to be determined at trial, but believed to be several million dollars." The same applies to the claim for fraud where the claim is harm to employers, non-custodial parent employees, custodial parents, and to children in "an amount to be determined at trial but believed to be several million dollars" and with respect to alleged violations of Texas law to the extent of relief allowed under that law.

The remaining claims, to the extent of equitable, declaratory, and other relief (civil penalties under the Virginia Consumer Act) are appropriate under the doctrine to protect Virginia citizenry. And damages the Commonwealth seeks on its own behalf would be maintainable, as these claims are permissible to redress commercial and other interests of the Commonwealth itself.

Accordingly, the Court finds that the pleadings are sufficient in law in part and deficient in part for the reasons stated. The demurrer will be sustained in part and overruled in part.

December 11, 2008

In this case brought by the Commonwealth of Virginia by its Governor and Attorney General and the Virginia Department of Social Services, Child Support Enforcement, the plaintiffs request a reconsideration of a recent ruling sustaining in part defendant's demurrer.

The Court ruled that the part of the Commonwealth's Complaint that asserts a right to recover money damages for children whose parents have contracted with defendant to collect child support payments was not well pleaded. Thus, the court sustained the demurrer as to the claims of fraud and conversion. The court stated, otherwise, the Commonwealth is free to pursue declaratory, injunctive, and quo warranto relief as well as claims for which it has a designated right to bring on its own behalf. The Commonwealth contends, however, that, under common law, as well as by statute (Va. Code § 2.2-111), the Governor has standing to maintain a suit to recover money damages for unnamed children whose right to child support payments has been illegally abridged, undermined, and reduced by the imposition of contractual fees and costs for collection and other practices by the defendant

There is no doubt that the Governor has, in the words of the statute, "the duty to protect and preserve the general welfare of the citizens of the Commonwealth" as in *Gilmore v. Finn*, 259 Va. 448, 457 (2000). However, the court in *Finn* did not say that the Governor is allowed to bring suit on behalf of unnamed individuals to claim monetary damages. For this and the other reasons mentioned at the hearing, the Commonwealth's reliance on *Finn* is misplaced.

Nor does the Court accept the cases from other jurisdictions where courts have permitted states to use *parens patriae* to assert monetary claims on behalf of particular aggrieved citizens as persuasive. The facts in the cases do not compare in the Commonwealth's favor because they did not have a *parens patriae* statute like Virginia's that restrains the proper use of the doctrine to cases where there are no procedures in place for citizens to redress their own wrongs.

Lastly, the Commonwealth argues that, under Virginia law, support orders must direct non-custodial parents to make their payments to the Department under Va. Code § 63.2-1901. However, the section states: "When so ordered by the Court or the Department, support for financially dependant

children and their custodians shall be paid by obligors to the Department's State Disbursement Unit (SDU) or in district offices located within the Commonwealth for processing by the SDU." The provision does not say that support orders must direct non-custodial parents to make their support payments to the Department. Rather, support amounts are due and payable to the Department "when ordered by the Court or the Department." Here, the Amended Complaint has no allegation that the Department is proceeding here to collect child support payments because the courts or the Department have so ordered payments to be made to the Department. The closest statement to this effect is embodied in language in the Amended Complaint's Prayer for Relief where the plaintiffs ask that this court, *inter alia*, to "compromise or modify child support obligations established by a court or CSE. . . ." It is well known that the prayer for relief is not part of a pleading and the language does not allege what the statute requires. And as I previously alluded, the Commonwealth is able to seek recovery of payments from the defendant to which it is itself entitled as, for example, in cases of reimbursement for public assistance which allegedly has been misdirected by defendant's actions.

Our Court has observed that Virginia is not a class action state. Others, including the Commonwealth, do not acquire standing to sue in a representative way by asserting the rights of others. *W. S. Carnes, Inc. v. Board of Supervisors*, 252 Va. 377, 383, 478 S.E.2d 295, 300 (1996). This in no way diminishes the sovereign's ability to sue to protect the interests of those under disability in its role as *parens patriae*, but, as defined by law, in line with the authorities, such action must be on behalf of named persons whose rights are said to have been violated.

For the foregoing reasons, the Court will adhere to the prior ruling with leave granted to file any further amended pleading. Plaintiff shall have fifteen days from the entry of the order implementing the rulings and defendant shall have ten days from receipt to file responsive pleadings.