COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Elder and Haley
Argued at Salem, Virginia


VIRGINIA BIRTH-RELATED NEUROLOGICAL
 INJURY COMPENSATION PROGRAM
                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 2299-04-3                        JUDGE LARRY G. ELDER
                                                           APRIL 5, 2005
JONA LYNN WILLIAMSON, MOTHER OF
 SUSAN LYNN SAUNDERS-WILLIAMSON


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Angela Boice Axselle, Assistant Attorney General (Jerry W. Kilgore,
            Attorney General; Francis S. Ferguson, Deputy Attorney General, on
            brief), for appellant.

            Andrea J. Geiger (Nora Beth Dorsey; Williamson & Lavecchia, L.C.,
            on brief), for appellee.


        The Virginia Birth-Related Neurological Injury Compensation Program (the Program)

appeals from a decision of the Workers' Compensation Commission determining that Jona Lynn

Williamson (Williamson), adoptive mother of Program participant Susan Lynn

Saunders-Williamson (Susan), is entitled to compensation for a generator under the Virginia

Birth-Related Neurological Injury Compensation Act (the Act).  The Program contends the

evidence was insufficient to prove a generator was "medically necessary" or "reasonable" and

that the commission's ruling improperly invaded the Program's ability to manage the fund

created by the Act.[1]  We hold credible evidence supports the commission's conclusion that a

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The Program also contends that the generator is not an "actual" expense compensable
under Code § 38.2-5009 because it has not yet been "incurred."  The Program failed to present

generator was both medically necessary and reasonable under the facts of this case and that the commission's ruling, based on its factual findings, did not improperly invade the Program's ability to manage the fund. Thus, we affirm.

I.

BACKGROUND

Susan was born on April 8, 2000. During Susan's birth, a "catastrophic event" occurred, which caused the death of Susan's biological mother and resulted in injuries to Susan that led to entry of an order formally accepting her into the Program on July 22, 2002. Susan is "profoundly mentally handicapped." She "breath[e]s on her own" without a ventilator but has chronic breathing difficulties which require treatment using electricity-dependent equipment.

By letter of October 9, 2003, Williamson asked the Program to provide her with a generator to operate the equipment used to treat Susan's chronic breathing difficulties in the event of a power outage. The Program denied the request, stating it has been the Program's "practice . . . to supply generators [only] when life-sustaining equipment (such as respirators) is required." The Program indicated it had "supplied back-up systems for all necessary equipment" and suggested Williamson file a medical priority request with her power supplier to "assure that in an emergency [she] would be given priority treatment." The Program indicated that "If such a request to the electric power company is denied, and with a letter stating so, the [Program] is willing to reconsider the request."

Williamson then appealed the Program's denial to the commission. To her appeal, she attached a letter her electricity provider had required her to sign, acknowledging she understood the power company could not guarantee electrical service or priority restoration thereof and that

_____

this argument to the commission, and we will not consider it for the first time on appeal. See Rule 5A:18.

it recommended she "maintain a back-up system," such as a generator. She also attached a prescription from Susan's doctor, G. Austin Spruill, indicating "Susan needs a generator available in a power outage to be able to run medical equipment that she needs for her complex medical condition."[2] At a hearing before the chief deputy commissioner, Williamson and one of Susan's nurses testified about Susan's chronic breathing difficulties and the difficulties that would arise in treating the condition in the event of a power outage.

The deputy commissioner and, on request for review, the commission both concluded that the evidence Williamson offered was sufficient to meet her burden of proof and entered an order awarding her payment for "a typical generator."

The Program noted this appeal.

II.

ANALYSIS

Code § 38.2-5009 provides in relevant part that an individual receiving an award of benefits under the Act shall be entitled to "compensation for . . . items relative to such injury," including "[a]ctual medically necessary and reasonable expenses of . . . residential and custodial care and service, special equipment or facilities." Code § 38.2-5009(A)(1).

Whether an expense is medically necessary and reasonable is a question of fact, cf. ARA Servs. v. Swift, 22 Va. App. 202, 208, 468 S.E.2d 684, 684-85 (1996) (decided under Workers' Compensation Act), and will be affirmed on appeal if the record contains credible evidence to

---

[2] In reply to the Program's request for review, Williamson attached to her written statement a supplemental letter from Dr. Spruill dated March 30, 2003. The commission expressly declined to consider that letter, and Williamson did not assign error to that decision. See 16 VAC 30-50-20 (Va. Workers' Comp. Comm'n Rule 1.6(D)) ("Only information contained in the file at the time of the original decision along with the request for review and any response from the opposing party will be considered. Additional evidence will not be accepted."). Thus, that letter is not part of the record before us on appeal, and we do not consider it.

support it, <u>Va. Birth-Related Neurological Injury Comp. Pgm. v. Young</u>, 34 Va. App. 306, 317, 541 S.E.2d 298, 304 (2001).  As with any medical determination, the opinion of the treating physician is entitled to great weight.  Cf. <u>Pilot Freight Carriers v. Reeves</u>, 1 Va. App. 435, 439, 339 S.E.2d 570, 572 (1986) (decided under Workers' Compensation Act).  Further, determinations of medical necessity, like questions of medical causation, need not be based solely on medical evidence.  Cf. <u>Dollar Gen'l Store v. Cridlin</u>, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996) (applying principle in context of determining causation under Workers' Compensation Act).  Necessity, like causation, may be proved by either direct or circumstantial evidence, including medical evidence or "[t]he testimony of a claimant."  Id.

Proving something to a "'[r]easonable degree of medical certainty' requires only [a showing] that 'it is at least *more probable than not* . . . .'"  <u>Greif Cos. v. Sipe</u>, 16 Va. App. 709, 714-15, 434 S.E.2d 314, 317-18 (1993) (quoting <u>Ross Labs. v. Barbour</u>, 13 Va. App. 373, 377, 412 S.E.2d 205, 208 (1991)) (upholding finding of causation where doctor admitted possibility of non-work-related causes for condition but opined condition "was more likely related to her work activity" without using term, "reasonable degree of medical certainty"); see <u>Coffey v. Va. Birth-Related Neurological Injury Comp. Pgm.</u>, 37 Va. App. 390, 405-06, 558 S.E.2d 563, 570-71 (2002) (concluding opinion not stated to requisite reasonable degree of medical certainty where physicians gave opinions based on "inconsisten[cies]" and "feeling[s]").  The commission is not barred from giving a medical opinion any weight simply because the health care provider rendering it does not state the opinion "to a reasonable degree of medical certainty."  See <u>Lindenfeld v. City of Richmond Sheriff's Office</u>, 25 Va. App. 775, 784, 492 S.E.2d 506, 510-11 (1997) (noting fact that physician failed to state opinion regarding causation to a reasonable degree of medical certainty--under statute requiring proof by "clear and convincing evidence, to a reasonable degree of medical certainty"--*permitted* commission to "assign little weight" to

- 4 -

opinion but did not indicate that fact *required* opinion be given little weight or excluded); Island Creek Coal Co. v. Breeding, 6 Va. App. 1, 11-12, 365 S.E.2d 782, 788 (1988) (holding commission could draw reasonable inference from evidence that "within a reasonable degree of medical certainty" standard was met and "[w]e will not substitute form over substance by requiring a physician to use the magic words 'to a reasonable medical certainty' when the record is void of any evidence of non-employment factors responsible for the hearing loss"); see also Mueller v. Commonwealth, 244 Va. 386, 410, 422 S.E.2d 380, 395 (1992) (holding where party does not object that medical opinions are not stated to a reasonable degree of medical certainty at time they are admitted, party may not assert objection for first time on appeal).

The Program concedes Susan's oxygen condenser and nebulizer are medically necessary equipment. However, it contends a generator provides no medical benefit and that the record contains no evidence to show how a generator is medically necessary in this case because Susan can breathe room air, has eight hours of backup oxygen, and would have time to reach a hospital or ambulance in the "unlikely event of a power outage or the rare event of a serious power outage." The Program contends that requiring it to provide a generator under the facts of this case would "imply" the Program must "provide generators for all medical equipment which runs on electricity" and might even require the Program to provide "a backup generator for the backup generator." The Program admits its practice has been to supply generators to provide emergency power for Program participants on respirators, but it contends respirators are life-*sustaining* whereas the equipment Susan uses is only life-*supporting* and, thus, that providing a generator for Susan's equipment is not medically necessary.

We hold the Program's policy amounts to an implicit conclusion that a generator, although not itself medical equipment, is "medically necessary" where the equipment it will be used to operate is medical equipment that is *life-sustaining*. Under the provisions of the Act

establishing the Program and Fund, any other interpretation would necessitate the conclusion that the Program's generator policy results in the distribution of money from the Fund in a manner inconsistent with the provisions of the Act. See Code § 38.2-5015 (requiring Program to use funds "solely in the interest of the recipients of awards pursuant to § 38.2-5009 and to administer the Program"). We hold further that credible evidence supports the commission's finding, under the facts of this case, that Susan's pulmonary equipment is life-*sustaining* rather than merely life-*supporting*, that a reliable source of electricity to operate that equipment is medically necessary, and that the purchase of a generator of sufficient power to operate Susan's life-sustaining equipment is a reasonable means of assuring the ongoing availability of that life-sustaining equipment.

As the commission noted, Williamson testified that although Susan is not on a ventilator, her equipment is nevertheless life-sustaining. Williamson testified that Susan's "oxygen level drops considerably at any time" and "if she didn't have her oxygen then she could die." Williamson explained further that Susan routinely uses a nebulizer to treat her asthma and that without use of the nebulizer, Susan's "lungs can close up." The evidence established that, at any given time, Susan might have enough oxygen in her backup tank to supply only five hours of oxygen. She has no means for using her nebulizer in the event of a power outage. A generator would allow Susan's ongoing use of her oxygen concentrator and nebulizer.

One of Susan's nurses, Kelly Matson, testified that, in addition to receiving oxygen and using a nebulizer, Susan requires daily treatments with a bubble mat in a Jacuzzi and a vest that uses air to "pound[] up and down on her chest" in order to loosen her congestion and improve her blood oxygen saturation levels. Matson testified that if the nebulizer, vest and Jacuzzi were not available for use in treating Susan and the supply of oxygen was limited, "a very, very serious situation" would exist because "we wouldn't have any of those means to try to get her

SATs up."  G. Austin Spruill, Susan's treating physician, opined that she "needs a generator available in a power outage to run medical equipment that she needs for her complex medical condition."

This evidence supports the commission's conclusion that Susan's pulmonary equipment is life-sustaining rather than merely life-supporting and that it is medically necessary for Williamson to have a reliable source of electricity to operate that equipment, i.e., that neither the equipment nor a reliable power source to operate it would be "only . . . a convenience."  Cf. Code § 38.2-5800 (in different chapter, regulating "Managed Care Health Insurance Plans," of same title, defining "'Medical necessity' or 'medically necessary,'" as used in that chapter, to mean "appropriate and necessary health care services which are rendered for any condition which, according to generally accepted principles of good medical practice, requires the diagnosis or direct care and treatment of an illness [or] injury . . . *and are not provided only as a convenience*" (emphasis added)); DMV v. Wallace, 29 Va. App. 228, 233-34, 511 S.E.2d 423, 425 (1999) (providing under "doctrine of *pari materia*" that courts should read and interpret statutes in harmony with related statutes).  As the commission found, Dr. Spruill's statement regarding the "medical equipment [Susan] needs for her complex condition" is broad enough to cover all necessary equipment about which Williamson and Nurse Matson testified.  Further, the chief deputy commissioner expressly found Williamson "has borne her burden of proof to establish that her daughter's life *depends* upon the constant availability of electricity-dependent equipment necessary for her pulmonary care" (emphasis added), i.e., that the equipment at issue is life-sustaining rather than merely life-supporting.  The commission implicitly adopted this finding.  Because the commission made these findings within the context of the Program's existing guidelines regarding generator backup for life-sustaining equipment, we hold it did not,

contrary to the Program's complaint, "overturn or undermine the Program's policy in regard to life sustaining as opposed to life supporting equipment."

Finally, credible evidence supports the commission's determination that the purchase of a generator of sufficient power to operate Susan's life-sustaining equipment is a reasonable means of assuring the ongoing availability of that equipment. The deputy commissioner took judicial notice of the fact that "power can be out, even in metropolitan areas, for as long as two weeks," in the aftermath of "a devastating hurricane," and Williamson presented evidence from her electricity provider that it could not guarantee her power would be restored in a priority fashion in the event of a power outage. This evidence supports the commission's conclusion that providing a generator of sufficient power to operate Susan's life-sustaining equipment[3] is a "reasonable expense[]" of "residential and custodial care and service, special equipment or facilities," especially when compared to the alternative of emergency hospitalization.

III.

For these reasons, we hold credible evidence supports the commission's conclusion that a generator was both medically necessary and reasonable under the facts of this case and that the commission's ruling, based on application of the Program's policy to the commission's factual findings, did not improperly invade the Program's ability to manage the Virginia Birth-Related Neurological Injury Compensation Fund. Thus, we affirm.

Affirmed.

---

[3] The size or capacity of the generator to which Williamson is entitled by this decision is limited by the need to power what the commission has found to be Susan's life-sustaining equipment.