COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Humphreys and Retired Judge Bumgardner[*]
Argued at Salem, Virginia


VIRGINIA BIRTH-RELATED NEUROLOGICAL
 INJURY COMPENSATION PROGRAM

                                                        MEMORANDUM OPINION[**] BY
v.        Record No. 1407-05-4                 JUDGE RUDOLPH BUMGARDNER, III
                                                              JANUARY 10, 2006
MONICA C. LONG, MOTHER OF ELIJAH JOHNSON


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Carla R. Collins, Assistant Attorney General (Judith Williams
            Jadgmann, Attorney General; Francis S. Ferguson, Deputy Attorney
            General, on briefs), for appellant.

            Ann LaCroix Jones (Donna Miller Rostant; Jones & Rostant, P.C.,
            on brief), for appellee.


        The Workers' Compensation Commission awarded benefits and expenses to Monica

Long under the Virginia Birth-Related Neurological Injury Compensation Act.  The Virginia

Birth-Related Neurological Injury Compensation Program contends the evidence was

insufficient to invoke the presumption that the injury occurred during labor and delivery, but was

sufficient to rebut it.  It also maintains the award for medical expert fees was unreasonable.

Concluding credible evidence supported the commission's findings, we affirm.

        On March 12, 2004, the mother filed a petition for benefits under the Act alleging her

son, Elijah, had sustained a birth-related neurological injury during labor and delivery.  The

parties agreed the child's condition, spastic quadriplegia and cerebral palsy, qualified as an

_____

        [*] Judge Bumgardner participated in the hearing and decision of this case prior to the
effective date of his retirement on December 31, 2005.

        [**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

injury covered by the Act, but they disputed its cause. The deputy commissioner denied the petition based in part upon the opinion of Dr. Thomas Bass. On appeal, the commission remanded the case because the doctor partly based his opinion on an ultrasound test that had not been performed.

The deputy commissioner again denied the petition after hearing additional evidence. He accepted the opinions of the Program's medical experts and rejected the views of the claimant's experts. The deputy commissioner concluded that the mother's acute chorioamnionitis[1] was "the unfortunate causative agent in this circumstance." He awarded the mother fees for medical experts. Both parties appealed.

The commission reversed the denial of benefits and affirmed the award of fees. It concluded:

> the evidence predominates in establishing that Elijah suffered a brain injury caused by oxygen deprivation. In reaching this conclusion, we note that virtually all of the experts who have rendered opinions in this case believe that Elijah's PVL[2] was caused, at least in part, by ischemia[3] associated with his mother's intrauterine infection, that is, the chorioamnionitis. This ischemia, in turn, caused decreased oxygen flow to the white matter of Elijah's premature brain, thereby causing the PVL and associated cerebral palsy.

The commission found the mother met the burden of proof necessary to invoke the presumption that the injury was birth-related, Code § 38.2-5008(A)(1). However, it found the Program failed

---

[1] Chorioamnionitis is defined as an "inflammation of fetal membranes." Dorland's Illustrated Medical Dictionary 264 (26th ed. 1985). The medical experts agreed the mother had chorioamnionitis.

[2] PVL, periventricular leukomalacia, is an injury to the white matter of the brain. The medical experts agreed the child suffered from PVL.

[3] Ischemia is defined as a "deficiency of blood in a part, due to functional construction or actual obstruction of a blood vessel." Dorland's, supra at 681.

to rebut the statutory presumption by proving the injury did not occur during labor, delivery, or resuscitation.

We view the evidence in the light most favorable to the mother. Central Virginia Obstetrics & Gynecology Assocs., P.C. v. Whitfield, 42 Va. App. 264, 269, 590 S.E.2d 631, 634 (2004). The mother had an expected delivery date of November 29, 2000. At around 6:00 p.m. August 28, 2000, the mother's membranes ruptured. The child was delivered by emergency caesarean section August 31, 2000 after only twenty-seven weeks gestation. He was blue and weighed 1.195 kg. (2.6 pounds). He was given oxygen, intubated, and placed on a ventilator. His Apgar scores were "6" at one minute and "7" at five minutes, having gained one point for color.

The child remained hospitalized until December 9, 2000. The first cranial ultrasound, taken September 8, 2000, was initially misinterpreted as normal, but it was not. A second cranial ultrasound taken October 10, 2000 was abnormal and led to the diagnosis of bilateral PVL, which caused his cerebral palsy. The child was also diagnosed at eight months with spastic quadriplegia.

The claimant presented evidence from several doctors who stated opinions that supported a finding that the child's injury was caused during labor and delivery, and was covered by the Act. Dr. John Bourgeois opined that the child sustained a neurological injury caused by oxygen deprivation that probably occurred during labor and delivery. He concluded the "injury was secondary to uterine infection and its effect on oxygen deprivation to the white matter of the brain of the fetus." He refuted the conclusion of the Program's experts that post-delivery testing showed the child was not affected by the infection. He noted that the child was normal for his size and had a regular heart rate when the mother's labor commenced. He also believed that three days of antibiotics would mask the effect of the chorioamnionitis on the child.

Dr. Wilbur Smith, a pediatric neuroradiologist, opined that the second ultrasound[4] showed a brain injury caused by oxygen deprivation. He noted that the mother's chorioamnionitis and her body's inflammatory response resulted in oxygen deprivation that caused the child's PVL. He agreed with the Program's doctors that "there is a link between chorioamnionitis and PVL, but [concluded that] that link absolutely involves oxygen deprivation as a major and known cause of injury to the brain cells." He explained the "pathophysiology of this process." The body's normal response to infection involves inflammation of the local area of infection. Inflammation causes increased production of white blood cells and a dilation of blood cells that results in a decreased blood flow. While an adult or full term infant could handle the variations in blood flow, the premature child's autoregulation of blood flow to protect the brain from these drops in pressure is particularly vulnerable.

Dr. Adré du Plessis opined to a reasonable degree of medical certainty that the child "suffered a brain injury caused by oxygen deprivation which occurred during the course of labor and delivery." He, like Dr. Smith, attributed the child's injuries to his poor autoregulation of blood flow due to his age and the effect the mother's infection had on him. "[I]n my opinion the final common pathway for his severe brain injury was oxygen deprivation from disturbed cerebral blood flow during labor."

Dr. Daniel Keim also concluded the child's injury was caused by oxygen deprivation. He noted that increased and decreased fetal heart rates noted during labor were consistent with ischemia, which results in decreased delivery of oxygen.

The Program presented expert opinions that the child's injury was neither caused by oxygen deprivation nor occurred during labor and delivery, and was not covered by the Act.

---

[4] Dr. Smith opined that the first cranial ultrasound "shows bilateral hyperechogenecity characteristic of periventricular encephalomalacia" (PVL).

Drs. Bass and Raymond Fahri maintained the mother's chorioamnionitis caused the child's PVL. Dr. Bass maintained that the child's "neurological problems are secondary to periventricular leukomalacia and not the result of mechanical injury or oxygen deprivation." He opined the child developed PVL secondary to the effect the mother's infection had on his brain. While Dr. Bass found no evidence of oxygen deprivation, he acknowledged that ischemia is involved with PVL and that "ischemia can be part of many types of brain lesions in the newborn."

The Act defines "birth-related neurological injury" as an "injury to the brain . . . caused by the deprivation of oxygen . . . that occurred in the course of labor, delivery or resuscitation." Code § 38.2-5001. The legislature recognized the difficulty of proving the timing of an injury and "enacted a presumption to assist potential claimants in obtaining benefits." Wolfe v. Virginia Birth-Related Neurological Injury Compensation Program, 40 Va. App. 565, 578, 580 S.E.2d 467, 473 (2003). Code § 38.2-5008(A)(1)(a) provides:

> A rebuttable presumption shall arise that the injury alleged is a birth-related neurological injury where it has been demonstrated, to the satisfaction of the Virginia Workers' Compensation Commission, that the infant has sustained a brain or spinal cord injury caused by oxygen deprivation or mechanical injury, and that the infant was thereby rendered permanently motorically disabled and (i) developmentally disabled or (ii) for infants sufficiently developed to be cognitively evaluated, cognitively disabled.

If the mother proved the child suffered a brain injury caused by oxygen deprivation, the commission could presume the injury occurred during labor, delivery, or resuscitation.

The claimant presented medical expert opinions that stated oxygen deprivation caused the child's PVL. The commission accepted that evidence which was sufficient to invoke the presumption of Code § 38.2-5008. We defer to the commission's findings of fact even "'if the weight of the evidence is contrary to those findings.'" Georgia-Pacific Corp. v. Robinson, 32 Va. App. 1, 5, 526 S.E.2d 267, 268 (2000) (quoting Kane Plumbing v. Small, 7 Va. App. 132, 136, 371 S.E.2d 828, 831 (1988)).

- 5 -

When the presumption applies, "the burden of production and the burden of persuasion on the issue of causation" shifts to the Program. Virginia Birth-Related Neurological Injury Compensation Program v. Young, 34 Va. App. 306, 312, 541 S.E.2d 298, 301 (2001). To defeat the presumption, "the Program must prove, to a reasonable degree of medical certainty, both (1) that the [child's] brain . . . injury did not occur 'in the course of labor, delivery, or resuscitation' . . . *and* (2) that there was a specific non-birth-related cause of the injury." Coffey v. Virginia Birth-Related Neurological Injury Compensation Program, 37 Va. App. 390, 402, 558 S.E.2d 563, 569 (2002) (citation omitted). See also Wolfe, 40 Va. App. at 578, 580 S.E.2d at 474.

The commission reviewed the conflicting medical opinions and gave more weight to the opinions of Drs. Keim, Bourgeois, du Plessis, and Smith. It rejected the Program's evidence that the chorioamnionitis may have been present and affected the child as early as two months before labor commenced. Credible evidence supported the commission's determination that the child was injured when the chorioamnionitis developed during labor and delivery.

While the Program contends it rebutted the presumption by proving the injury did not occur during labor, delivery, or resuscitation,[5] the evidence was in conflict. After a thorough analysis of the evidence, the commission determined the Program had not sustained its burden to rebut the presumption. It failed to prove the child's injury did not occur during labor, delivery, or resuscitation. The commission found that much of the Program's evidence supported the conclusion that the child's PVL developed during labor and before the emergency delivery. "[W]hether the Program rebutted the presumption is a question to be determined by the commission as fact finder after weighing the evidence produced by both parties." Young, 34

---

[5] The Program also contends the commission erred in finding it did not prove a specific non-birth-related cause of injury. We need not address that issue because we hold the Program failed to prove the injury did not occur during labor, delivery, or resuscitation.

Va. App. at 317, 541 S.E.2d at 304. The commission's factual determinations are conclusive and binding on appeal. Virginia Birth-Related Neurological Injury Compensation Program v. Bakke, 46 Va. App. 508, 517, 620 S.E.2d 107, 111 (2005).

Next, we consider the Program's challenge to the award for expert witness fees. The Act provides for an award of reasonable fees and costs, and this Court reviews the award for an abuse of discretion. Code § 38.2-5009(A)(3); National Linen Serv. v. Parker, 21 Va. App. 8, 19, 461 S.E.2d 404, 409 (1995). Those costs are to be "taxed as expenses incurred in connection with the filing of a claim, in accordance with [Code] § 38.2-5009." Code § 38.2-5007.

The mother submitted an itemized list of fees and costs incurred in bringing the claim. Code § 38.2-5009(A)(3).[6] The itemization included the fees of Drs. Keim, Bourgeois, and du Plessis for preparing and answering written depositions submitted by the Program. The deputy commissioner found the fees and time expended reasonable. The commission affirmed.

This was a difficult labor and delivery that generated extensive medical records. None of the experts treated the child, and they relied upon the same records to reach their various conclusions. The medical experts rendered precise opinions reached after complex analyses of numerous, intricate medical details. The particular inquiry touched on dynamic areas of medical science where knowledge and understanding were expanding. The opinions sought demanded careful and diligent review of the medical records and the research. We cannot say the time expended by the experts or the rates of compensation were unreasonable as a matter of law. The commission's finding fell within the parameters established by the evidence. "The action of the commission here was well reasoned and grounded in facts evident on the record. Accordingly,

---

[6] Upon finding that an infant qualifies under the Act, the commission "shall make an award for compensation for . . . [r]easonable expenses incurred in connection with the filing of a claim under this chapter, including reasonable attorneys' fees, which shall be subject to the approval and award of the Commission." Code § 38.2-5009(A)(3).

we find no abuse of discretion." <u>National Linen Serv.</u>, 21 Va. App. at 19-20, 461 S.E.2d at 409. "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the commission's finding." <u>Wagner Enters., Inc. v. Brooks</u>, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

We hold the commission did not err in its award of benefits and expenses. Accordingly, we affirm.

<u>Affirmed.</u>